<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 21-350 (SDW) |
| v. | **OPINION** |
| WILLIAM BOUZA, | July 22, 2025 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is *pro se*[1] Defendant William Bouza's motion for compassionate release under the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A). (D.E. 65 ("Motion" or "Mot.").) This Court having considered the parties' submissions, and for the reasons stated below, denies Defendant's Motion.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On April 27, 2022, Defendant pleaded guilty to a two-count Superseding Information charging him with conspiring to distribute and possess heroin contrary to 21 U.S.C § 841(a)(1) and (b)(1)(A), in violation of 21 U.S.C § 846 (Count 1); and possessing with intent to distribute one kilogram of heroin in violation of 21 U.S.C § 841(a)(1) and (b)(1)(A) (Count 2). (*See* D.E.

---

[1] Counsel represented Defendant during the course of this litigation through his plea agreement and sentencing. (D.E. 51; D.E. 61.)

51 at 1.) On September 13, 2022, this Court sentenced Defendant to 168 months' imprisonment and to pay a $25,000 fine, a sentence that was within the range provided for in his Rule 11(c)(1)(C) plea agreement. (D.E. 60.)

On June 20, 2024, Defendant submitted a request for compassionate release to the warden of Federal Correctional Institution ("FCI") Allenwood Medium, a Bureau of Prisons ("BOP") facility located in Pennsylvania. (D.E. 65-1.) Defendant appears to have mailed the Motion to the clerk's office on July 17, 2024, *id.*, and it was filed by the clerk's office on July 23, 2024. He primarily contends that his confinement during the COVID-19 pandemic and the guard shortage at FCI Allenwood Medium are extraordinary and compelling reasons that justify his release. (Mot. at 3, 9.) He further asserts that he has been rehabilitated since sentencing, having completed various educational programs and developed a release plan. (Mot. at 11–12.) The Government opposed the Motion on August 16, 2024. (D.E. 67 ("Opp.").) Defendant has since been transferred from FCI Allenwood Medium to FCI Beaumont Low in Texas.[2] (D.E. 68.)

## II.   LEGAL STANDARD

Although a district court generally has a limited ability to modify a federally imposed sentence once it commences, *Dillon v. United States*, 560 U.S. 817, 824–25 (2010), the FSA permits district courts to grant compassionate releases when there exist "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Under the FSA, a defendant seeking sentence reduction has the burden to show: (1) that he has satisfied the procedural prerequisites for judicial review; and (2) that compelling and extraordinary reasons

---

[2] This Court notes that Defendant requested an extension to file a reply brief to the Government's opposition. This Court did not address Defendant's request and exercises its discretion here to decide Defendant's motion in the absence of a reply. *See United States v. Burney*, Crim. No. 18-606, 2021 WL 4963253, at *6 (D.N.J. Oct. 25, 2021).

2

exist to justify compassionate release. *See United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). The prerequisites for judicial review are straightforward. First, a defendant seeking a reduced sentence must ask the BOP to file a motion for a reduced sentence on his behalf. 18 U.S.C. § 3582(c)(1)(A). Then, the defendant must either (i) wait 30 days for the BOP to respond; or (ii) exhaust all available administrative appeals after receiving an adverse decision from the BOP. *See United States v. Alston*, Crim. No. 03-844, 2023 WL 2238297, at *2 (D.N.J. Feb. 27, 2023) (citing 18 U.S.C. § 3582(c)(1)(A)). Once the procedural prerequisites have been satisfied, a court may reduce a sentence if it "finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 § U.S.C. 3553(a), to the extent they are applicable." *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

### III. DISCUSSION

#### A. Administrative Exhaustion Requirement

As mentioned above, under the FSA, a defendant may move for compassionate release after "fully exhaust[ing] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Failure to comply with the procedural prerequisites presents "a glaring roadblock foreclosing compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Here, Defendant submitted a request for compassionate release to the warden of FCI Allenwood Medium on June 20, 2024, and mailed the present Motion to the Court 27 days later on July 17, 2024. The Clerk's Office docketed the Motion on July 23, 2024. Procedurally, Defendant's motion was filed within the 30-day statutory waiting period following his request to the warden. The Motion may be denied on that ground alone, however this Court will proceed to address the merits of the application. *See Raia*, 954 F.3d at 597.

### B. Extraordinary and Compelling Reasons

On the second prong of the analysis, Defendant fails to present any extraordinary and compelling reasons that justify his release. When determining whether a defendant's reasons are "extraordinary and compelling," district courts may look to statutory text, dictionary definitions, and the policy statement to "give shape to the otherwise amorphous phrase." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). While some courts have recognized that the effects of the COVID-19 pandemic may weigh in favor of release, general conditions affecting the whole prison population are not in themselves extraordinary or compelling. *See Raia*, 954 F.3d at 597 (holding that, since COVID-19 affects everyone, risk of infection is an insufficient reason for release). Defendant argues that the COVID-19 restrictions at FCI Allenwood Medium, prolonged by staff shortages, created overly harsh and punitive conditions. (Mot. at 6.) He notes that some district courts have found such restrictive conditions relevant when considering sentence reductions. (*Id.*) While the cases cited by Defendant recognize that punitive lockdown conditions may weigh in favor of compassionate release, "harsh conditions of confinement alone" are insufficient to constitute extraordinary and compelling reasons. *United States v. Hatcher*, Crim. No. 18-454-10, 2021 WL 1535310, at *4 (S.D.N.Y. Apr. 19, 2021). Defendant must present additional reasons beyond prison-wide conditions that qualify as extraordinary and compelling.

4

*See United States v. Olawoye*, 477 F. Supp. 3d 1159, 1164 (D. Or. 2020); *see also United States v. Johnson*, 671 F. Supp. 3d 265, 281 (E.D.N.Y. 2023). Defendant fails to meet this standard as he only cites the generalized harsh conditions of confinement. The only unique reasons Defendant presents are that he contracted COVID-19 twice and suffers from asthma. (Mot. at 8.) These reasons are insufficient as he provides no medical documentation that he is at greater risk of serious illness, especially at this juncture of the COVID-19 era, and claims no injuries that were incurred by overly punitive conditions. And, even if Defendant had shown such individualized evidence, he has since been moved to a new facility, which moots any facility-specific argument that Defendant may have.[3]

Additionally, Defendant argues that his circumstances were unforeseen and unknown at the time of sentencing; however, all relevant facts were already considered. (Mot. at 8.); U.S SENT'G GUIDELINES MANUAL §1B1.13(b)(e) (U.S SENT'G GUIDELINES 2023). Both this Court and Defendant were aware of the difficult conditions facing the federal prison system at the time of sentencing, and nothing has changed in this Court's view since that date. (D.E. 61 at 27); *United States v. Loveings*, Crim. No. 20-204-13, 2023 WL 6445895, at *1 (W.D. Pa. Oct. 3, 2023) (holding it is unlikely that "extraordinary and compelling reasons could ever be established where, … the sentence was a product of a Rule 11(c)(1)(C) plea agreement entered into by a Defendant who was in pre-trial detention during the midst of the COVID-19 pandemic"). Defendant's sentence is already at the lower end of the agreed-upon range, is significantly below the applicable guideline range, and Defendant has presented no new information indicating that this sentence is

---

[3] This Court notes that Defendant was transferred from a medium-security facility to a low-security facility. While Defendant has not submitted any information regarding the conditions at Beaumont Low, it is presumed that a lower-security designation involves less restrictive conditions, which in addition to the relaxing of COVID-19 restrictions across the country, would further undermine Defendant's argument that his continued incarceration presents extraordinary and compelling circumstances.

inappropriate. (D.E. 60 at 2.) Accordingly, there are no extraordinary and compelling reasons that would justify Defendant's release.

### C. 3553(a) Factors Weigh Against Defendant's Release

Even where extraordinary and compelling reasons are established, this Court must consider the § 3553(a) factors to the extent they are applicable. 18 U.S.C § 3582(c); 18 U.S.C § 3553(a). Despite finding that Defendant has not established extraordinary and compelling reasons, this Court will review the § 3553(a) factors for the purposes of completeness and finality.[4]

Although Defendant asserts that he has been rehabilitated and argues that this provides a basis for sentence reduction, the nature of his criminal acts weighs against release. 18 § 3553(a)(2)(A). Defendant relies on evidence showing that he has completed fourteen educational courses and received several certifications. (D.E. 65-1 at 2.) Defendant further asserts that he has developed a release plan and has access to a support network to aid his transition into post-incarceration life. (Mot. at 12–13.) While this Court acknowledges and commends Defendant's efforts toward rehabilitation, these are actions that the law expects defendants to take and do not serve to mitigate the serious conduct that Defendant committed. Defendant brought a significant volume of narcotics into the District of New Jersey, engaged in sophisticated criminal activity, and led law enforcement on a high-speed chase through residential streets in an attempt to evade arrest. (D.E. 1.) Not only did Defendant inject addictive and destructive drugs into the community, but he also participated in incredibly dangerous acts to conceal his crimes. Despite any rehabilitative

---

[4] "These factors include the history and characteristics of the defendant, and the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; and (3) to protect the public[.]" *United States v. Vaquiz*, 846 F. App'x 85, 86 (3d Cir. 2021) (citing § 3553(a)(1), (2)(A)-(C)).

efforts Defendant may have undertaken, a sentence reduction would be inappropriate due to the magnitude and severity of his crime.

The need for specific deterrence, to promote respect for the law and protect the public also weighs against Defendant's release, especially considering the sizable amount of time remaining on his sentence. 18 U.S.C § 3553(a)(2)(A)–(C). Courts are reluctant to grant compassionate release when a defendant has a significant portion of their sentence remaining, even when extraordinary and compelling reasons are present. *See United States v. Pawloski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming denial of release after Defendant had served two years of a 15 year sentence); *United States v. Williams*, 844 F. App'x 485, 485–86 (3d Cir. 2021) (affirming denial of release when defendant served only a portion of a 70 month sentence); *Vaquiz*, 846 F. App'x at 86 (3d Cir. 2021) (affirming denial of release when defendant had served less than half of his 180 month sentence). Defendant is expected to be released on December 30, 2030, meaning he has served less than 50% of his sentence, a fact which weighs against a finding that he has been adequately deterred from similar behavior in the future. (Opp. at 4.)

Finally, reducing the Defendant's sentence could create unwarranted sentencing disparities when compared to similarly situated defendants. *See* 18 U.S.C. § 3553(a)(6). Defendant's 168 month sentence falls on the lower end of the agreed-upon range in the plea agreement and is below the range calculated in the PSR, which appropriately accounts for his criminal history and offense conduct. (Opp. at 4.) Granting release this early into the sentence without an appropriate reason would defy precedent, which weighs against release.

Taken in the aggregate, the § 3553(a) factors clearly weigh heavily against Defendant's release.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release is **DENIED**. An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc:   Parties